USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-24-14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DIVISION 1181 AMALGAMATED TRANSIT
UNION – NEW YORK EMPLOYEES PENSION
FUND and its Trustees MICHAEL CORDIELLO
and STANLEY BRETTSCHNEIDER,

                              Plaintiffs,                            13-cv-9112 (PKC)

       -against-                                           MEMORANDUM
                                                              AND ORDER

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                              Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        In a Memorandum and Order dated August 27, 2014 (the "Order"), the Court granted in part and denied in part defendant's motion to dismiss plaintiffs' First Amended Complaint (the "FAC") for failure to state a claim for relief. Div. 1181 Amalgamated Transit Union – NY Emps. Pension Fund v. New York City Dep't of Educ., No. 13-cv-9112 (PKC), 2014 WL 4370724 (S.D.N.Y. Aug. 27, 2014). Familiarity with the Memorandum and Order is assumed. Defendant, the New York City Department of Education (the "DOE"), now moves for reconsideration of this Court's denial of the motion with respect to the claims that the DOE was a joint employer with the DOE Contractors and that the DOE was an alter ego of the DOE Contractors. The motion to reconsider is made pursuant to Rule 59(e), Fed. R. Civ. P., and Local Civil Rule 6.3. In the alternative, defendant moves for certification of a potentially controlling issue of law for interlocutory review, pursuant to 29 U.S.C. § 1292(b). The motion to reconsider is granted to the extent that the Court now holds that the DOE may not be held liable under the joint employer theory of liability. The DOE's motions are otherwise denied.

DISCUSSION

I.   Legal Standard for a Motion to Reconsider

Local Civil Rule 6.3, elaborating on Rule 59(e), Fed. R. Civ. P., allows a party to move for reconsideration as to "matters or controlling decisions which counsel believes the Court has overlooked."  U.S. Dist. Ct. Rules S. & E.D.N.Y., Civ. R. 6.3; see Truong v. Charles Schwab & Co., Inc., 07 Civ. 8085 (SHS), 2009 WL 464452, *1 (S.D.N.Y. Feb. 24, 2009) (internal quotation marks and citations omitted).  The standards for granting a motion to reconsider are strict: "[r]econsideration of a previous order by the court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  Cordero v. Astrue, 574 F. Supp. 2d 373, 380 (S.D.N.Y. 2008) (internal quotation marks and citations omitted).

Motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  While a court may grant the motion "to correct a clear error of law or prevent manifest injustice," Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004) (quotation marks and citations omitted), "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."  Shrader, 70 F.3d at 257.

II.   The Merits of the Motion to Reconsider

a.   Joint Employer Theory

The Court has reviewed the entirety of the DOE's motion and concludes that reconsideration and modification is required as to one aspect of the Order.  The FAC alleges that

- 2 -

the DOE qualifies as an "employer" for purposes of withdrawal liability under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. § 1381 et seq., because it was a joint employer with each of the DOE Contractors. (Compl't ¶¶ 119-122) In the Order, the Court concluded that the joint employer doctrine, as applied by the NLRB, is applicable to claims under the MPPAA and denied the DOE's motion to dismiss the claim that the DOE was a joint employer with the DOE Contractors for purposes of withdrawal liability. 2014 WL 4370724 at *7-8. The Court found that the joint employer theory was a viable theory by construing the Second Circuit's definition of "employer," as defined in Korea Shipping Corp. v. N.Y. Shipping Ass'n-Int'l Longshoremen's Ass'n Pension Trust Fund, 880 F.2d 1531, 1537 (2d Cir. 1989) ("the term employer in 29 U.S.C. § 1381(a) means a person who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants") (quotation marks and citations omitted), as incorporating the MPPAA's definition of "obligation to contribute," which includes both a contractual obligation and an obligation arising under "applicable labor-management relations law." 29 U.S.C. § 1392(a). Because the joint employer doctrine has been applied under "applicable labor-management relations law" to bind non-signatories to the terms of a CBA, see, e.g., Serv. Emps. Int'l Union, Local 32BJ v. NLRB, 647 F.3d 435 (2d Cir. 2011), the Court concluded that the joint employer doctrine is applicable in the ERISA context. Upon reconsideration, the Court now concludes that the joint employer doctrine is not applicable to the DOE in this case.

        The MPPAA defines "obligation to contribute," in part, as "an obligation to contribute arising as a result of a duty under applicable labor-management relations law." 29 U.S.C. § 1392(a)(2). As the Court noted in the Order, the National Labor Relations Act

("NLRA") is an "applicable labor-management relations law" under the MPPAA.  See Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co. Inc., 484 U.S. 539, 545-46 (1988).  Because the Second Circuit defined "employer" under the MPPAA to be an entity that "is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plans participants," Korea Shipping, 880 F.2d at 1537, the Court, in the August 27, 2014 Order, concluded that an employer under the MPPAA includes an entity that has an obligation to contribute arising from a duty under applicable labor-management relations law, such as the NLRA.  2014 WL 4370724, at *8 (quotation marks and citation omitted).  However, the NLRA states that "[t]he term 'employer' . . . shall not include . . . any State or political subdivision thereof . . . ," 29 U.S.C. § 152(2), and "[t]he LMRA, in 29 U.S.C. § 142(3), incorporates the definition of 'employer' from the NLRA."  Rodriguez-Rivera v. City of New York, 05 Civ. 10897 (LAP), 2007 WL 766195, at *3 (S.D.N.Y. March 12, 2007).  Moreover, "the [New York City] Department of Education[] is clearly a political subdivision of the state and therefore not an 'employer' under the NLRA or LMRA."  Gear v. Dep't of Educ., 07 Civ. 11102 (NRB), 2010 WL 5297850, at *4 (S.D.N.Y. Dec. 21, 2010), aff'd, 472 F. App'x 67 (2d Cir. 2012).

There are two plausible interpretations of the MPPAA's reference to a duty arising under labor-management relations law when determining whether a government entity has an obligation to contribute under the statute and therefore falls within the Second Circuit's definition of "employer."  The first interpretation, which the Court adopts, excludes a government entity from being considered an "employer" under the MPPAA when imposing an obligation to contribute under 29 U.S.C. § 1392(a)(2).  This interpretation takes the language that Congress effectuated in the MPPAA at face value.  Congress, in amending ERISA through the

MPPAA, chose to define an obligation to contribute as an obligation arising in one of two ways: (1) "under one or more collective bargaining (or related) agreements or (2) as a result of a duty under applicable labor-management relations law." 29 U.S.C. § 1392(a). Thus, in enacting section 1392(a)(2), Congress chose to incorporate labor law principles. Controlling precedent establishes that the NLRA is an "applicable labor-management relations law." See Laborers Health & Welfare Trust Fund for N. Cal., 484 U.S. at 545-46. Although the NLRB has used the joint employer doctrine to bind non-signatories to CBAs, the NLRA and the LMRA contain a statutory exemption for "any State or political subdivision thereof" from the term "employer," 29 U S.C. § 152(2), and the DOE is covered by that exemption. Therefore, the DOE is not an "employer" under the NLRA and cannot have an obligation to contribute arising from a duty under applicable labor-management relations law which would thereby subject it to withdrawal liability under ERISA and the MPPAA.

In contrast, plaintiffs emphasize the language of ERISA and the MPPAA that does not explicitly exempt government entities from the definition of "employer." Although ERISA and the MPPAA do not exclude government entities from the definition of "employer" under the statute, the statute exempts from coverage pension plans "established and maintained for its employees" by government subdivisions. 29 U.S.C. § 1321(b)(2). The argument is that when Congress wanted to exclude government pension plans from coverage under the statute it did so explicitly; however, Congress chose not to explicitly exclude government entities from the definition of "employer." Because Congress specifically exempted government funded and maintained pension plans from coverage under the statute, plaintiffs argue that Congress's failure to exclude government entities from the definition of "employer" indicates that government

entities are subject to liability under ERISA and the MPPAA where a government entity is involved with a private, non-governmental plan.

This interpretation, however, does not give full meaning to the MPPAA's incorporation of labor law principles through the language that reads "as a result of a duty arising under applicable labor-management relations law." 29 U.S.C. § 1392(a)(2). Applicable labor-management relations law imposes no duty on a government entity as an employer. Therefore, the joint employer doctrine, as applied to impose an obligation to contribute on an employer through 29 U.S.C. § 1392(a)(2), does not apply to the DOE for purposes of withdrawal liability under ERISA and the MPPAA.

  b. Alter Ego Theory

Defendant also argues that the DOE, as a governmental entity, cannot be subject to withdrawal liability as the alter ego of its contractors. The Second Circuit has explicitly held that the alter ego doctrine is applicable in ERISA cases. See Ret. Plan of the UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S., 629 F.3d 282 (2d Cir. 2010). Although the Second Circuit acknowledged that the alter ego doctrine was developed in a labor law context, Id., 629 F.3d at 288 (citing Massachusetts Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 139 F.3d 304, 305-06 (1st Cir. 1998)), the statutory exemptions of the NLRA do not necessarily apply. Rather than applying the alter ego theory in cases arising under ERISA through specific statutory language therein incorporating applicable labor-management relations law, the Second Circuit merely looked to NLRA jurisprudence for guidance in determining whether the alter ego doctrine is applicable in ERISA cases. Id. Thus, the specific statutory exemptions contained within the NLRA or the LMRA do not apply with equal force in the alter

ego context. Accordingly, plaintiffs' claim for withdrawal liability premised on the theory that the DOE was an alter ego of the DOE Contractors survives.

      III.      Section 1292(b) Certification

In the event the Court were to deny any portion of the motion to reconsider, defendant seeks to have the Court certify the question to the United States Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 1292(b). Thus, the Court construes the motion as applying to the alter ego theory of liability. Section 1292(b) permits an interlocutory appeal when a district judge "shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." Section 1292(b) "is a rare exception to the final judgment rule that generally prohibits piecemeal appeals" and is to be granted sparingly. Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865-66 (2d Cir. 1996).

Defendant fails to meet this standard. First, as noted, the Second Circuit has determined that the alter ego doctrine is applicable in the ERISA context. Kombassan, 629 F.3d at 288-89. Second, discovery and an eventual summary judgment motion by the DOE may eliminate the need for any appellate review of the issue. Therefore, defendant's motion for certification pursuant to section 1292(b) is DENIED.

## CONCLUSION

Having considered all of the arguments advanced by the DOE, its motion for reconsideration is GRANTED with respect to the claim that it was a joint employer with the DOE Contractors and otherwise DENIED. Plaintiffs' claim for withdrawal liability premised on

- 8 -

a joint employer theory of liability is dismissed. The DOE's motion for certification pursuant to section 1292(b) is DENIED.

        SO ORDERED.

                                                P. Kevin Castel
                                              United States District Judge

Dated: New York, New York
       November 21, 2014