Barry S. Slevin, Esq.
Jeffrey S. Swyers, Esq.
Owen M. Rumelt, Esq.
Paul E. Knupp, III, Esq.
SLEVIN & HART, P.C.
Attorneys for Plaintiffs
614 Hempstead Gardens Drive
West Hempstead, NY 11552
(516) 203-7570
          -and-
1625 Massachusetts Avenue N.W., Ste. 450
Washington D.C. 20036
(202) 797-8700
(202) 234-8231 (fax)
bslevin@slevinhart.com
jswyers@slevinhart.com
orumelt@slevinhart.com
pknupp@slevinhart.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DIVISION 1181 AMALGAMATED TRANSIT
UNION – NEW YORK EMPLOYEES PENSION
FUND and its BOARD OF TRUSTEES,

|  |  |
|---|---|
| Plaintiffs, | **THIRD AMENDED COMPLAINT** |
| -against- |  |
| NEW YORK CITY DEPARTMENT OF EDUCATION, | Case No. 13-cv-9112-PKC |
| Defendant. |  |

-------------------------------------------------------------------X

Plaintiffs, by counsel, hereby complain of Defendant, as follows:

## Introduction

1.      This is a lawsuit by and on behalf of the Division 1181 A.T.U. - New York Employees Pension Fund (the "Fund") and its Board of Trustees against the New York City Department of Education ("DOE") brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001 *et seq.*  The Fund seeks a judgment awarding delinquent withdrawal liability

payments, interest, liquidated damages, and attorneys' fees and costs incurred as a result of specified employers' withdrawals from the Fund, a multiemployer pension plan.

## Jurisdiction and Venue

2.      This Court has jurisdiction over this action under Sections 502(e), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 and Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the Defendant maintains its primary place of business in this district.

## Parties

4.      The Fund is a multiemployer pension plan within the meaning of Sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3), that provides retirement benefits to eligible participants.

5.      The Fund is administered at  20 North Central Avenue, 3rd Floor, Valley Stream, NY 11580.

6.      Plaintiff Board of Trustees of the Fund is a fiduciary of the Fund within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).  Pursuant to Sections 502(a)(3), 4221(d), and 4301(a)(1) and (b) of ERISA, 29 U.S.C. §§ 1132(a)(3), 1401(d), and 1451(a)(1) and (b), the Plaintiff Board of Trustees is authorized to bring this action on behalf of the Fund, its participants and beneficiaries, for the purpose of collecting withdrawal liability.

7.      Defendant DOE is an agency of the City of New York with its principal place of business located at 52 Chambers Street, New York, New York.

8.      At all times pertinent to this action, for purposes of withdrawal liability, Defendant DOE was an "employer" with respect to the employees of Hoyt Transportation, Inc.

("Hoyt"); DAK Transportation, Inc. ("DAK"); Canal Escorts ("Canal"); Logan Bus Company, Inc. ("Logan"); Amboy Bus Co., Inc. ("Amboy"), Atlantic Escorts, Inc. ("Atlantic Escorts"), and Atlantic Queens Bus Corp. ("Atlantic Queens") (Amboy, Atlantic Escorts, and Atlantic Queens are referred to herein collectively as "Atlantic"); B & M Escorts Inc. ("B & M"); R And C Transit, Inc. ("R And C"); Tufaro Transit Co., Inc. ("Tufaro") and School Days, Inc. ("School Days") (Tufaro and School Days are referred to herein collectively as the "Tufaro Companies") as that term is used in Section 4201(a) of ERISA, 29 U.S.C. § 1381(a).

## COUNT I:

### DOE Is An "Employer" For Purposes Of ERISA Withdrawal Liability As That Term Is Used In ERISA Section 4201(a) And Is Thus Liable For The Withdrawal Liability Of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, And The Tufaro Companies.

**A.      Background.**

9.      The Fund incorporates the foregoing paragraphs as if fully stated herein.

10.      ERISA Sections 4201 – 4225, 29 U.S.C. §§ 1381 – 1461, establish withdrawal liability for multiemployer plans.  ERISA Section 4201(a), 29 U.S.C. § 1381(a) provides, "if an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability."

11.      This case involves a unique system whereby the DOE provides school bus transportation and escort services through private contractors while retaining and exercising substantial control over the core operations and finances of those contractors, and the employees performing the services.

12.      At all relevant times, the Fund's participants were employees of companies, including Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies, that

were parties to collective bargaining agreements ("CBA" or "CBAs") with the Amalgamated Transit Union Local 1181-1061, AFL-CIO (the "Union"), a labor organization representing employees in an industry affecting interstate commerce.  These participants were drivers of school buses, attendants/escorts on school buses, and other related positions for education transport in New York City, pursuant to contracts between the relevant company and the DOE to provide such services.

13.     At all relevant times, the DOE was party to contracts with companies including Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies ("DOE Contractors") to provide school bus transportation service and attendant/escort service on school buses in the city of New York (the "DOE Contracts").

14.     At all relevant times, the DOE Contracts with Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies contained contractual provisions known as Employee Protection Provisions ("EPPs"), discussed in further detail below.

15.     At all relevant times, the DOE Contracts and the CBAs with Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies obligated Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies respectively to make monthly contribution payments to the Fund in specified amounts ("Contributions") on behalf of the employees covered by the CBA for work performed pursuant to the DOE Contracts.

**B.     DOE Control of the Operations of the DOE Contractors.**

16.     The DOE retained the right to terminate its contracts with the DOE Contractors at any time for its own convenience.

17.     The DOE determined the number of runs or routes assigned to each DOE Contractor and thus the number of employees a DOE Contractor employed.  The DOE retained

the right and exercised the right to create new routes and to eliminate and/or consolidate routes at any time in its sole discretion.

18.     The DOE determined the stops and the children assigned to each route.

19.     In the DOE Contracts and in the written extensions thereof, the DOE designated each DOE Contractor as its official "purchasing agent" and required that the DOE Contractors purchase all third-party services and equipment relating to the operation of the DOE bus routes as the DOE's purchasing agent in order to avoid State, Federal, and Local Taxes, and that the DOE Contractor pass the tax savings along to the DOE.

20.     The DOE set the hours and work schedules of drivers and escorts by specifying the pick-up and drop-off times for children on its routes.  In this way, the DOE effectively controlled whether employees had overtime work.

21.      The DOE required that each of the DOE Contractors maintain a dedicated website connection with the DOE using DOE software.

22.     The DOE dictated the relationship and interactions between the bus personnel and the students by prescribing protocols for responding to situations on the buses and communicating with parents.

23.     The DOE required that any accident, breakdown, or problem on the bus be reported to the DOE within 15 or 30 minutes, depending on the type of occurrence.

24.     The DOE prohibited DOE Contractors from replacing their CEO without the DOE's prior approval. Any change in the DOE Contractors' management had to be reported to the DOE.

25.     With respect to the buses used by the DOE Contractor, the DOE dictated the type and color of each bus to be used and required the DOE Contractor to paint the DOE number and

the DOE route number on the bus.  The DOE Contractor was required to list with the DOE every bus in its fleet and where the buses were parked and stored. The DOE required the DOE Contractors to report to the DOE immediately any change in the location where its buses were parked and/or stored.

26.     The DOE dictated the maintenance and cleaning requirements for the buses, and required the DOE Contractor to keep specific maintenance records for all buses for submission to the DOE upon request at any time.

27.     Upon information and belief, the DOE controlled the equipment and operations of the DOE Contractors in other ways.

28.     The DOE required the DOE Contractors to make all records, financial and otherwise, available for the DOE's inspection upon request at any time.

29.     Upon information and belief, the DOE required that each DOE Contractor have insurance through a DOE-approved insurance carrier and that the insurance cover drivers so that they would have no personal liability arising from their employment.

30.     The DOE and its Office of Pupil Transportation each had the exact same business purpose: to safely transport the children of New York City to and from school.

31.     The DOE and each of the DOE Contractors had the same operations, as each of the DOE Contractors provided the vehicle through which the DOE hired workers to perform its work.

32.     The DOE maintained and compiled the Master Seniority Lists from which it required the DOE Contractors to hire employees before they were permitted to seek certification for an outside hire.

33.     Under the DOE Contracts a DOE Contractor may not transfer or assign its DOE Contract or any of the work performed thereunder except with the DOE's prior approval.

34.     The DOE required the DOE Contractors to report to DOE and obtain approval by DOE of any change in ownership of the DOE Contractor over 5%.

35.     The DOE and each of the DOE Contractors had the same customers – the school children of New York City and their parents or guardians and/or the DOE was each of the DOE Contractors only customer.

**C.     DOE's Control and Supervision of Drivers and Escorts.**

36.     The DOE required DOE certification of all drivers and escorts.   No DOE Contractor could employ a driver or escort unless the person held a valid DOE certification.   The certification requirements included a medical examination, a physical performance test, and hours of training conducted by the DOE.

37.     Accordingly, any driver or escort hired by a DOE Contractor had to first be approved by DOE.   For any driver or escort a DOE Contractor wanted to hire, the DOE required that the DOE Contractor submit an employment application for the potential hire directly to the DOE along with three references.

38.     The DOE Contractors reported to the DOE on an almost daily basis their lists of employees and updated information on driver and escort certifications and status.

39.     The DOE retained and routinely exercised the right to decertify and thus suspend or fire any driver or escort employee.   The DOE investigated complaints about driver and escort performance. During investigations of performance by Union members, DOE investigators met with the employee and a Union representative.   In most cases, the Union representative, DOE personnel, and employee jointly resolved cases involving allegations of employee misconduct.

40.     The DOE mandated and distributed guidelines that set forth the types of misconduct for which drivers and escorts could be penalized and the applicable penalty, which included total revocation of certification or a suspension for a specific number of days.

41.     The DOE required each bus driver to keep a daily log and submit the log to the DOE for inspection.

42.     If the DOE suspended or revoked the certification of a driver or escort Union member, and no settlement was reached, the Union represented the driver or escort at a hearing conducted by the DOE.  If a suspension or revocation was upheld, the employee could not work in the industry for the period of the suspension or revocation determined by the DOE.  If a suspension or revocation was overturned and the employee was entitled to back pay and benefits, the DOE was obligated to pay the back pay due to the worker and Contributions due to the Fund during the suspension to the DOE Contractor for payment to the employee and the Fund respectively.

43.     The DOE supervised the work performance of the drivers and escorts on a daily basis. The DOE employs inspectors who regularly follow school buses to evaluate drivers' performance.  If a driver violates a DOE rule (*e.g.*, drives too fast, runs a red light), the inspectors have the authority stop the driver and issue fines or the driver's certification may be suspended or revoked.

44.     DOE inspectors regularly conducted bus inspections at each DOE Contractor's bus yard.  In these inspections, drivers are evaluated to determine whether they are complying with the DOE's detailed rules, *e.g.*, having a first aid kit on the bus, complying with the DOE uniform requirements.  The DOE fines the DOE Contractors for violations of rules, and if the

driver is responsible, the driver often pays the fine or is otherwise subject to discipline by the DOE.

45.     Drivers and escorts were subject to drug and alcohol testing by the DOE.  The DOE revokes the certification of any driver or escort who tests positive.  The DOE determines the schedule for random drug and alcohol testing and the drivers who are randomly tested.

**D.     DOE Control of the Finances of the DOE Contractors.**

46.     Upon information and belief, the revenue from the DOE Contracts was the DOE Contractors' only source of income.

47.     The DOE retained the right to terminate its DOE Contracts with the DOE Contractors at any time for its own convenience.

48.     Upon information and belief, the DOE Contractors were thinly capitalized, with their only assets of value being the DOE Contracts and the revenues received thereunder.  In most instances, the buses were either leased or financed, and thus had little or no net value. Despite the DOE's substantial control over these DOE Contractors, the DOE did not mandate any minimum capitalization requirements.  As a result, when DOE Contractors lost their DOE Contracts they were unable to pay the resulting withdrawal liability.

49.     For example, in the recent bankruptcies filed by DOE Contractors United Companies, Hoyt, and Atlantic, there were insufficient assets to pay withdrawal liability.

50.     Based upon the DOE control described herein, and upon information and belief, the DOE controlled and managed the finances of the DOE Contractors in other ways.

**E.     DOE Involvement in Labor Relations with Respect to the Employees**.

51.     In addition to the above regarding DOE's control and supervision over the employees and control of working conditions, the DOE also met with the Union on a regular monthly basis to discuss issues of mutual concern.

52.     The DOE actively participated in prior collective bargaining negotiations between the Union and the DOE Contractors.  In 1995, when the CBA settled, the City issued a press release announcing the agreement with the DOE Contractors and the Union and the City's "accomplishments" in those negotiations.

53.     Prior to the July 2006-June 2009 CBA, the DOE approved a wage increase for certain escorts who physically carry children from/to their home to/from the school bus that was agreed upon in negotiations between the Union and the DOE Contractors but contingent upon an amendment of the DOE Contracts with the DOE allowing for a full pass-through of any additional amounts payable to "carry-kid" escorts.

54.     An Advice Memorandum issued by the Office of the General Counsel of the National Labor Relations Board concluded that DOE was a joint employer and/or employer of the employees of companies which included Hoyt and DAK because "DOE has inserted itself in a 'basic area' of the other employers' labor relations, *i.e.* the provision of the EPPs covering the … Employers' employees."

55.     Upon information and belief, the DOE was involved in driver and escort collective bargaining in additional ways.

**F.     The Mollen Agreement Between the Union and the DOE.**

56.     In 1979, the DOE announced that it would accept bids from DOE Contractors on certain school bus routes and that the bids would not include provisions providing the bus

workers parity with the wages and benefits of drivers for the New York Transit Authority as the prior contracts had provided.

57.     As a result, the bus workers from the DOE Contractors, represented by the Union, began a strike on or about February 15, 1979.

58.     The strike continued for three months before being resolved by a written agreement between the DOE and the Union negotiated before the Honorable Milton Mollen, then the presiding Justice of the Appellate Division, Second Department, subsequently known as the "Mollen Agreement."

59.     The centerpiece of the Mollen Agreement was that the DOE agreed to include employee protection provisions ("EPPs") in all of its school bus transportation contracts (the DOE Contracts).

60.     Through the EPPs the DOE obligated itself to compile and keep two Master Seniority Lists, one comprised of all school bus drivers and the other comprised of escorts who work for any of the contractors under a DOE Contract.

61.     Through the EPPs, the DOE required that, when drivers and/or escorts were laid-off or became unemployed by a DOE Contractor due to any action by the DOE (*i.e.*, as a result of the loss of a contract or a reduction in service directed by the DOE), the other Contractors and any new Contractors were required to hire, when they had a vacant position, from the pool of laid-off workers on the Master Seniority Lists until the Lists were exhausted.  The DOE conducted at least annually a "master pick" at which displaced drivers and escorts on the Lists chose, in order of List rank, from among the positions available among DOE Contractors.

62.     Under the EPPs, the DOE required the DOE Contractors who obtained workers through the master pick to maintain the employees' current level of wages and benefits and contribute to the Fund on behalf of those workers.

63.     The EPPs expressly mandated that all DOE Contractors employing a worker that previously participated in the Fund participate in the Fund by signing a participation agreement with the Fund, and make contributions to the Fund at the rate specified in the DOE Contract or in such greater amounts as specified in the CBA.

64.     The obligations undertaken by the DOE through the EPPs foreclosed the possibility of operational changes of a DOE Contractor causing any significant decline in the number of participants or level of incoming contributions to the Fund.  If a DOE Contractor lost its DOE Contract, the DOE Contractor that was assigned the work was required to offer the resulting employment positions to displaced participants on the Master Seniority List and to participate in the Fund for those participants.

65.     The Mollen Agreement expired in 1982, however, for more than 33 years, from 1979 until 2012, the DOE adhered to and affirmed the requirements of the Mollen Agreement through contractual agreements with the DOE Contractors by executing extensions of its DOE Contracts containing the EPP provisions at least sixteen (16) times and thus keeping the EPPs in place.  As a result, every DOE Contract from 1979 through 2012 has contained the EPPs.  Upon information and belief, through approximately December 2012, the DOE was under contract with at least 50 companies in which the DOE Contracts contained the EPPs and therefore the DOE has entered into hundreds of contracts containing the EPPs.

66.     The DOE has publicly acknowledged that an advantage of the EPPs was to "remove a major impediment to [DOE Contractor] bidding (pension 'withdrawal liability')."

G.     **The System Created by the Mollen Agreement and Maintained Under the Subsequent Written Extensions of the DOE Contracts through 2012.**

67.     By imposing the EPPs in the DOE Contracts and written extensions thereof, the DOE dictated: (1) whom the DOE Contractors may hire; (2) the wages the DOE Contractors must pay employees the DOE required they hire; and (3) the medical and pension benefits as well as the Contributions to the Fund that must be paid on behalf of the employees the DOE required they hire.

68.     Under the EPPs contained in the DOE Contracts and the written extensions thereof, the DOE further required that all DOE Contractors file a copy of an executed agreement to participate in the Fund with the Director of the Office of Pupil Transportation of the DOE as a precondition to commencing performance of any work to be performed under the DOE Contract.

69.     In the EPPs, the DOE further required all DOE Contractors to make Contributions to the Fund in amounts that are specifically stated in the DOE Contracts or in "such greater amounts as may be required based on contributions on behalf of the majority of employers . . . pursuant to a collective bargaining agreement with Local 1181-1061…"

70.     Upon information and belief, the payments from the DOE to the DOE Contractor were the DOE Contractors' only source of revenue and thus were the only funding source for the Contribution payments.  If the DOE Contractor did not receive its monthly payment from the DOE, the DOE Contractor could not make the monthly Contribution payment to the Fund.

71.     The costs of the Contributions to the Fund were included in the payments made by the DOE to the DOE Contractors, with the intent and requirement under the DOE Contracts that the DOE Contractor pay the required portion of the monthly money received from the DOE to the Fund for Contributions.

72.     For escorts, under the DOE Contracts, the DOE is fully responsible for, and fully obligated to fund the wages and Contributions for the escorts. The DOE Contracts specifically provide that the DOE is obligated to fully fund the costs of the Contributions to the Fund, and, at the option of the DOE Contractor, DOE even advances amounts to the DOE Contractor to be paid for Contributions to the Fund.

73.     Under the EPPs in the DOE Contracts, the DOE cannot award a DOE Contract to a DOE Contractor employing participants of the Fund that does not agree to direct portions of its revenue under the DOE Contract to the Fund for the designated Contributions required under the DOE Contract and the CBA.

74.     Under the EPPs in the DOE Contracts, the DOE is obligated to terminate the DOE Contract of any DOE Contractor employing participants of the Fund that does not agree to direct portions of its revenue under the DOE Contract to the Fund for Contributions required under the DOE Contract and accordingly make said Contributions as required under the CBA and the DOE Contracts.  In the event that a DOE Contractor fails to do so, under the EPPs the DOE is obligated to terminate the DOE Contractor's DOE Contract and replace that DOE Contractor with another DOE Contractor that agrees to comply with this system.

75.     Under the DOE Contracts, the DOE requires the DOE Contractor to certify annually that all Contributions to the Fund have been made and audited and that there are no outstanding balances of Contributions due to the Fund.

76.     Under the DOE Contracts, the DOE has committed a portion of its payments to the DOE Contractors to be paid to the Fund for Contributions through the DOE Contractors as a direct pass-through from the DOE to the Fund.

77.     This obligation on the part of the DOE is demonstrated through the "Attachment Procedure Obligation" agreed to by the DOE in the EPPs, which provides:

> if the contractor is found to be in violation of the foregoing employee protection provisions regarding the payment of wages, welfare benefit contributions, pension contributions, or other aspects of compensation or benefits, then the Director of the Office of Pupil Transportation, within thirty (30) days of written notice, ***shall withhold the appropriate amounts*** from any payments due to the contractor ***and pay them directly*** to the applicable union for the benefit of the employees affected, to the Division 1181 A.T.U. – New York Employees Pension Fund or other applicable union pension fund for the benefit of the employees affected or to the appropriate Welfare Fund for the benefit of the employees affected.

(emphasis supplied).

78.     Under the Attachment Procedure Obligation in the EPPs, when the Union or the Fund notifies the DOE that Contributions to the Fund are due, the DOE is required to pay the Contributions directly to the Fund or to the Union on behalf of the Fund.  Under the terms of the DOE Contracts, the DOE retains no discretion over the process; rather, DOE is obligated to pay the amount of the Contributions due directly to the Fund.

79.     Over the years, many of the DOE Contractors have chosen to and have in fact made the required monthly Contributions to the Fund through the Attachment Procedure Obligation whereby the DOE pays the Contributions due directly to the Fund, rather than the DOE Contractor paying the Fund directly.

80.     In Section XIV(f)(3) of the CBA, Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies agreed that "[t]he Board of Trustees' determination that contributions are owed constitutes the required finding for purposes of N.Y.C. Department of Education attachments."

81.   The CBA and the DOE Contracts containing the EPPs and the written extensions thereof are mutually-dependent and interrelated and each expressly cross-references the other with respect to the Contribution requirement.

82.   The Fund is a direct, expressly named, intended third-party beneficiary of the EPPs and the DOE Contracts and the written extensions of the DOE Contracts, and, as such, the DOE had a contractual obligation to contribute to the Fund.

83.   The DOE Contracts, and the written extensions thereof, and the EPPs contained therein, are agreements "related" to one or more CBAs pursuant to ERISA Section 4212(a)(1), 29 U.S.C. § 1392(a)(1).

84.   Under the DOE Contracts and the written extensions thereof containing the EPPs, the DOE Contractors were conduits for the Contributions for which the DOE was obligated to pay into the Fund.

85.   Under the DOE Contracts containing the EPPs and the written extensions thereof, the DOE had a contractual obligation to make Contributions to the Fund with respect to the employees of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies and other similarly-situated DOE Contractors.

**H.   Based on DOE's Contribution Obligation to the Fund, the PBGC Granted the Fund an Exemption to the ERISA Withdrawal Liability Requirements.**

86.   As a multiemployer plan, the Fund must meet funding requirements under applicable federal law, including ERISA.   ERISA imposes "withdrawal liability" on each contractor for a proportionate share of any unfunded vested liabilities of the Fund in the event that a contractor ceases to have an obligation to contribute to the Fund or permanently ceases covered operations.

87.     In or about 1983, based upon the continuity and stability of the contribution income as a result of the DOE's obligation under the DOE Contracts containing the EPPs, upon which the Fund relied, the Trustees of the Fund requested that the Pension Benefit Guaranty Corporation ("PBGC") grant an exemption to the requirement under ERISA that withdrawal liability be imposed when a DOE Contractor withdrew from the Fund.

88.     In or about 1983, the PBGC granted the Fund an exemption for withdrawal liability because it determined that the Fund's contribution income was not threatened by the potential withdrawal of DOE Contractors because of the DOE's obligation to continue to provide Contributions to the Fund under the DOE Contracts containing the EPPs.  Pursuant to that exemption, the Fund adopted rules that eliminated withdrawal liability for DOE Contractors.

I.     **The DOE's Decision to Not Include the EPPs in the DOE Contracts.**

89.     In or about 2012, the DOE began to refuse to extend DOE Contracts containing the EPPs and issued bids for new DOE Contracts that did not include the EPPs.

90.     As a result of this elimination of the contractual commitments by the DOE to continue to make Contributions, the Trustees amended the withdrawal liability rules to eliminate the exception for withdrawal liability assessments for DOE operations.  Thus, upon the withdrawal of any participating DOE Contractor from the Fund on or after April 16, 2013, the Fund was required to assess and collect withdrawal liability.

91.     As a result of the DOE's disavowal of the EPPs, the DOE Contracts of Hoyt, DAK, Canal, Logan, B & M, R And C, and the Tufaro Companies, which contained the EPPs, were not extended or renewed.  The DOE issued bids for the work of these DOE Contractors under contracts that did not include the EPPs, and as a result these Contractors lost their work

from the DOE to other contractors not subject to the EPPs.  As a result, these DOE Contractors permanently ceased covered operations and withdrew from the Fund.

92.     As a further result of the DOE's disavowal of the EPPs, Atlantic filed for bankruptcy under Chapter 11 of the Bankruptcy Code and ultimately permanently ceased covered operations and withdrew from the Fund.

**J.     The Withdrawal Liability of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies.**

**(1)  Hoyt and DAK**

93.     The Fund determined Hoyt and DAK are a part of the same controlled group and constitute a single employer for purposes of withdrawal liability under ERISA Section 4001(b), 29 U.S.C. § 1301(b).

94.     The Fund's Trustees determined that Hoyt and DAK effected a "complete withdrawal" from the Fund on or about June 30, 2013, within the meaning of ERISA Section 4203(a), 29 U.S.C. § 1383(a).

95.     The Fund's actuaries calculated the withdrawal liability to be $22,526,170, as determined under ERISA Section 4201(b), 29 U.S.C. § 1381(b).

96.     On October 11, 2013, Defendant DOE, as an "employer" of the employees of Hoyt and DAK as that term is used in ERISA Section 4201(a), 29 U.S.C. § 1381(a), received a Notice and Demand for payment of the withdrawal liability issued by the Fund in accordance with Sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1).

97.     This Notice and Demand for payment informed DOE that its withdrawal liability for Hoyt and DAK is $22,526,170, and provided a payment schedule for the withdrawal liability, with interest on that payment, as required by ERISA Section 4219, 29 U.S.C. § 1399.  That schedule provided that DOE pay the withdrawal liability in a single installment of $22,526,170

or in seventy-five (75) quarterly installments of $544,233.79, plus a final quarterly payment of $333,421.07.  Pursuant to ERISA Section 4219, 29 U.S.C. § 1399, the Notice and Demand stated that the first quarterly installment of $544,233.79 was due no later than sixty days (60) from the date of the Notice, *i.e.* December 10, 2013.  Accordingly, if DOE did not pay the full withdrawal liability of $22,526,170, the first installment of $544,233.79 was due by December 10, 2013, and its next installments of $544,233.79 were due by March 10, 2014, June 10, 2014, and September 10, 2014.

98.    DOE has not paid to the Fund any of the payments due under the Fund's withdrawal liability payment schedule.

### (2)    Canal

99.    The Fund's Trustees determined that Canal effected a "complete withdrawal" from the Fund on or about August 6, 2013 within the meaning of ERISA Section 4203(a), 29 U.S.C. § 1383(a).

100.    The Fund's actuaries calculated the withdrawal liability to be $4,229,356.00 as determined under ERISA Section 4201(b), 29 U.S.C. § 1381(b).

101.    On December 13, 2013, Defendant DOE, as an "employer" of the employees of Canal as that term is used in ERISA Section 4201(a), 29 U.S.C. § 1381(a), received a Notice and Demand for payment of the withdrawal liability issued by the Fund in accordance with Sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1).

102.    This Notice and Demand for payment informed DOE that its withdrawal liability for Canal is $4,229,356.00, and provided a payment schedule for the withdrawal liability, with interest on that payment, as required by ERISA Section 4219, 29 U.S.C. § 1399.  That schedule provided that DOE pay the withdrawal liability in a single installment of $4,229,356.00 or in

seventy-one (71) quarterly installments of $105,004.63 plus a final quarterly payment of $23,902.99.  Pursuant to ERISA Section 4219, 29 U.S.C. § 1399, the Notice and Demand stated that the first quarterly installment of $105,004.63 was due no later than sixty days (60) from the date of the Notice, *i.e.* February 11, 2014.  Accordingly, if DOE did not pay the full withdrawal liability of $22,526,170, the first installment of $105,004.63 was due by February 11, 2014, and its next installments of $105,004.63 were due by May 11, 2014, August 11, 2014, and November 11, 2014.

103.    DOE has not paid to the Fund any of the payments due under the Fund's withdrawal liability payment schedule.

### (3)    Logan

104.    The Fund's Trustees determined that Logan effected a "complete withdrawal" from the Fund on or about June 30, 2013 within the meaning of ERISA Section 4203(a), 29 U.S.C. § 1383(a).

105.    The Fund's actuaries calculated the withdrawal liability to be $2,064,426.00 as determined under ERISA Section 4201(b), 29 U.S.C. § 1381(b).

106.    On December 13, 2013, Defendant DOE, as an "employer" of the employees of Logan as that term is used in ERISA Section 4201(a), 29 U.S.C. § 1381(a), received a Notice and Demand for payment of the withdrawal liability issued by the Fund in accordance with Sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1).

107.    This Notice and Demand for payment informed DOE that its withdrawal liability for Logan is $2,064,426.00, and provided a payment schedule for the withdrawal liability, with interest on that payment, as required by ERISA Section 4219, 29 U.S.C. § 1399.  That schedule provided that DOE pay the withdrawal liability in a single installment of $2,064,426.00 or in

fifty-six (56) quarterly installments of $57,951.91 plus a final quarterly payment of $1,359.34. Pursuant to ERISA Section 4219, 29 U.S.C. § 1399, the Notice and Demand stated that the first quarterly installment of $57,951.91 was due no later than sixty days (60) from the date of the Notice, *i.e.* February 11, 2014. Accordingly, if DOE did not pay the full withdrawal liability of $2,064,426.00, the first installment of $57,951.91 was due by February 11, 2014, and its next installments of $57,951.91 were due by May 11, 2014, August 11, 2014, and November 11, 2014.

108.    DOE has not paid to the Fund any of the payments due under the Fund's withdrawal liability payment schedule.

### (4)    Atlantic

109.    The Fund determined that Amboy, Atlantic Escorts, and Atlantic Queens are a part of the same controlled group and constitute a single employer for purposes of withdrawal liability under ERISA Section 4001(b), 29 U.S.C. § 1301(b).

110.    The Fund's Trustees determined that Atlantic effected a "complete withdrawal" from the Fund on or about December 31, 2013 within the meaning of ERISA Section 4203(a), 29 U.S.C. § 1383(a).

111.    The Fund's actuaries calculated the withdrawal liability to be $86,567,063.00 as determined under ERISA Section 4201(b), 29 U.S.C. § 1381(b).

112.    On May 21, 2014, Defendant DOE, as an "employer" of the employees of Atlantic as that term is used in ERISA Section 4201(a), 29 U.S.C. § 1381(a), received a Notice and Demand for payment of the withdrawal liability issued by the Fund in accordance with Sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1).

113.    This Notice and Demand for payment informed DOE that its withdrawal liability

for Atlantic is $86,567,063.00, and provided a payment schedule for the withdrawal liability,

with interest on that payment, as required by ERISA Section 4219, 29 U.S.C. § 1399.  That

schedule provided that DOE pay the withdrawal liability in a single installment of

$86,567,063.00 or in eighty (80) quarterly installments of $2,038,887.85.  Pursuant to ERISA

Section 4219, 29 U.S.C. § 1399, the Notice and Demand stated that the first quarterly installment

of $2,038,887.85 was due no later than sixty days (60) from the date of the Notice, *i.e.* July 21,

2014.  Accordingly, if DOE did not pay the full withdrawal liability of $86,567,063.00, the first

installment of $2,038,887.85 was due by July 21, 2014, and its next installment of $2,038,887.85

was due by October 21, 2014.

114.    On September 3, 2015, Defendant DOE, as an "employer" of the employees of

Atlantic as that term is used in ERISA Section 4201(a), 29 U.S.C. § 1381(a), received a revised

Notice and Demand for payment of the withdrawal liability issued by the Fund in accordance

with Sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1).

115.    This revised Notice and Demand for payment informed DOE that its withdrawal

liability amount had been revised based on the actuarial valuation of the Fund's unfunded vested

benefits for the year ending August 31, 2013. The revised Notice and Demand informed DOE

that its withdrawal liability amount was now $86,170,635.00, payable in a single installment or

seventy-nine (79) quarterly payments of $2,038,887.85 and a final payment of $711,537.50.

This revised assessment did not change the amounts due for each quarterly installment payment,

nor delay or prolong the withdrawal liability payment schedule.  Under both the original and

revised assessments the initial quarterly payment was due by July 21, 2014.  The only change to

the quarterly installment payments is that there are now 79 quarterly installments of

$2,038,887.85 and a final payment of $711,537.50 instead of 80 quarterly payments of $2,038,887.85.

116.    DOE has not paid to the Fund any of the payments due under the Fund's withdrawal liability payment schedule.

**(5)    B & M**

117.    The Fund's Trustees determined that B & M effected a "complete withdrawal" from the Fund on or about June 30, 2014 within the meaning of ERISA Section 4203(a), 29 U.S.C. § 1383(a).

118.    The Fund's actuaries calculated the withdrawal liability to be $1,203,736.00 as determined under ERISA Section 4201(b), 29 U.S.C. § 1381(b).

119.    On June 10, 2015, Defendant DOE, as an "employer" of the employees of B & M as that term is used in ERISA Section 4201(a), 29 U.S.C. § 1381(a), received a Notice and Demand for payment of the withdrawal liability issued by the Fund in accordance with Sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1).

120.    This Notice and Demand for payment informed DOE that its withdrawal liability for B & M is $1,203,736.00, and provided a payment schedule for the withdrawal liability, with interest on that payment, as required by ERISA Section 4219, 29 U.S.C. § 1399.  That schedule provided that DOE pay the withdrawal liability in a single installment of $1,203,736.00 or in eighty (80) quarterly installments of $26,478.22.  Pursuant to ERISA Section 4219, 29 U.S.C. § 1399, the Notice and Demand stated that the first quarterly installment of $26,478.22 was due no later than sixty days (60) from the date of the Notice, *i.e.* August 9, 2015.  Accordingly, if DOE did not pay the full withdrawal liability of $1,203,736, the first installment of $26,478.22 was

due by August 9, 2015, and its next installments of $26,478.22 are due by November 9, 2015, February 9, 2015, and May 9, 2015.

121.    DOE has not paid to the Fund the first installment due under the withdrawal liability payment schedule.

**(6)    R And C**

122.    The Fund's Trustees determined that R And C effected a "complete withdrawal" from the Fund on or about June 30, 2014 within the meaning of ERISA Section 4203(a), 29 U.S.C. § 1383(a).

123.    The Fund's actuaries calculated the withdrawal liability to be $173,156.00 as determined under ERISA Section 4201(b), 29 U.S.C. § 1381(b).

124.    On June 10, 2015, Defendant DOE, as an "employer" of the employees of R And C as that term is used in ERISA Section 4201(a), 29 U.S.C. § 1381(a), received a Notice and Demand for payment of the withdrawal liability issued by the Fund in accordance with Sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1).

125.    This Notice and Demand for payment informed DOE that its withdrawal liability for R And C is $173,156, and provided a payment schedule for the withdrawal liability, with interest on that payment, as required by ERISA Section 4219, 29 U.S.C. § 1399.  That schedule provided that DOE pay the withdrawal liability in a single installment of $173,156 or in eighty (80) quarterly installments of $3,853.76.  Pursuant to ERISA Section 4219, 29 U.S.C. § 1399, the Notice and Demand stated that the first quarterly installment of $3,853.76 was due no later than sixty days (60) from the date of the Notice, *i.e.* August 9, 2015.  Accordingly, if DOE did not pay the full withdrawal liability of $173,156, the first installment of $3,853.76 was due by August 9, 2015.

126.    DOE has not paid to the Fund the first installment due under the withdrawal liability payment schedule.

### (7)    The Tufaro Companies

127.    The Fund determined that Tufaro and School Days are a part of the same controlled group and constitute a single employer for purposes of withdrawal liability under ERISA Section 4001(b), 29 U.S.C. § 1301(b).

128.    The Fund's Trustees determined that the Tufaro Companies effected a "complete withdrawal" from the Fund on or about June 30, 2014 within the meaning of ERISA Section 4203(a), 29 U.S.C. § 1383(a).

129.    The Fund's actuaries calculated the withdrawal liability to be $2,299,563.00 as determined under ERISA Section 4201(b), 29 U.S.C. § 1381(b).

130.    On June 10, 2015, Defendant DOE, as an "employer" of the employees of the Tufaro Companies as that term is used in ERISA Section 4201(a), 29 U.S.C. § 1381(a), received a Notice and Demand for payment of the withdrawal liability issued by the Fund in accordance with Sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1).

131.    This Notice and Demand for payment informed DOE that its withdrawal liability for the Tufaro Companies is $2,299,563.00, and provided a payment schedule for the withdrawal liability, with interest on that payment, as required by ERISA Section 4219, 29 U.S.C. § 1399. That schedule provided that DOE pay the withdrawal liability in a single installment of $2,299,563.00 or in eighty (80) quarterly installments of $54,040.14.  Pursuant to ERISA Section 4219, 29 U.S.C. § 1399, the Notice and Demand stated that the first quarterly installment of $54,040.14 was due no later than sixty days (60) from the date of the Notice, *i.e.* August 9, 2015.

Accordingly, if DOE did not pay the full withdrawal liability of $2,299,563.00, the first installment of $54,040.14 was due by August 9, 2015.

132.    DOE has not paid to the Fund the first installment due under the Fund's withdrawal liability payment schedule.

> **K.    DOE Is an Employer for Purposes of ERISA Withdrawal Liability And Is Thus Liable for the Withdrawal Liability of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies.**

133.    Given the totality of the circumstances, DOE is an "employer" with respect to the employees of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies, as that term is used in ERISA Section 4201(a), 29 U.S.C. § 1381(a), and is therefore liable to the Fund for the withdrawal liability arising from the withdrawals of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies.

134.    DOE is an "employer" pursuant to ERISA Section 3(5), 29 U.S.C. § 1002(5), because it acted directly as the employer of the employees of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies and/or acted indirectly in the interest of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies in relation to the Fund.

135.    Accordingly, DOE has violated Section 515 of ERISA, 29 U.S.C. § 1145, and is liable under ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2), for the delinquent quarterly withdrawal liability payments in the amount of $ 3,809,636.53 for Hoyt and DAK, in the amount of $630,027.78 for Canal, in the amount of $347,711.44 for Logan, in the amount of $10,194,439.25 for Atlantic, in the amount of $26,478.22 for B & M, in the amount of $3,853.76 for R And C, and in the amount of $54,040.14 for the Tufaro Companies, plus interest on the delinquent quarterly payments through the date of payment, liquidated damages equal to twenty

percent of the delinquent withdrawal liability payments, and the Fund's attorneys' fees and costs incurred in the collection of the delinquent quarterly payment, including the attorneys' fees and costs of this action.  In addition, DOE will be liable for additional amounts as they become due under the schedules and ultimately for the entire amounts of the withdrawal liabilities.

### COUNT II:

### DOE Is An "Employer" For Purposes Of ERISA Withdrawal Liability As That Term Is Used In ERISA Section 4201(a) And Is Thus Liable For The Withdrawal Liability Of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, And The Tufaro Companies Because It Had A Contractual Obligation To Contribute To The Fund Under The DOE Contracts Containing The EPPs And The Written Extensions Thereof.

136.     The Fund incorporates the foregoing paragraphs as if fully stated herein.

137.     At all relevant times, the DOE had a contractual obligation to contribute to the Fund under the DOE Contracts, including those with Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies containing the EPPs, and the written extensions thereof.

138.     Because of its contractual obligation to contribute to the Fund under the DOE Contracts containing the EPPs and the written extensions thereof and the system established thereunder, DOE is an "employer" with respect to the employees of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies, as that term is used in ERISA Section 4201(a), 29 U.S.C. § 1381(a), and is therefore liable to the Fund for the withdrawal liability arising from the withdrawals from the Fund of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies.

**COUNT III:**

**DOE Is Liable For The Withdrawal Liability Of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies, As Each Are Alter Egos Of DOE.**

139.    The Fund incorporates the foregoing paragraphs as if fully stated herein.

140.    In the alternative, the DOE is liable to the Fund for the withdrawal liabilities of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies because the DOE is the alter ego of each company under the federal common law alter ego standard applicable in ERISA cases.

141.    Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies are each alter egos of the DOE given the facts and allegations stated above, including but not limited to the DOE's control and domination over the management of the bus operations, the employees, and the finances of these DOE Contractors, the supervision exercised by DOE over the operations and employees, and the fact that DOE and these DOE Contractors had substantially the same business purpose and customers.

**COUNT IV:**

**DOE Is Liable For The Withdrawal Liability Of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies, As A Single Employer With Each.**

142.    The Fund incorporates the foregoing paragraphs as if fully stated herein.

143.    In the alternative, based upon the facts and allegations stated above, the DOE is liable to the Fund for the withdrawal liabilities of Hoyt, DAK, Canal, Logan,  Atlantic, B & M, R And C, and the Tufaro Companies under the Single Employer Doctrine because the DOE and each of Hoyt/DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies each constituted a single employer and a single integrated enterprise due to the interrelation of

operations between the DOE and each of the subject DOE Contractors and DOE's control of labor relations with respect to each of the subject DOE Contractors.

### COUNT V:

### DOE Is Liable For The Withdrawal Liability Of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies, As A Joint Employer With Each.

144.    The Fund incorporates the foregoing paragraphs as if fully stated herein.

145.    In the alternative, DOE qualifies as an "employer" of the employees of Hoyt and DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies for purposes of ERISA withdrawal liability because it was a joint employer with each of Hoyt/DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies.

146.    Based upon the facts and allegations stated above, the DOE exerted significant control over the employees to at least the same extent as the DOE Contractors themselves and, at a minimum, shared and co-determined essential terms and conditions of employment of the employees of Hoyt/DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies.

147.    In an Advice Memorandum by the Office of the General Counsel of the National Labor Relations Board, the General Counsel's Office concluded that DOE was a joint employer and/or employer of the employees of companies which included Hoyt and DAK because "DOE has inserted itself in a 'basic area' of the other employers' labor relations, *i.e.* the provision of the EPPs covering the … Employers' employees."

**WHEREFORE,** the Fund requests a judgment against Defendant DOE for all amounts due to the Fund at the time this cause reaches judgment and other relief, to wit:

(a)     A judgment finding that for purposes of withdrawal liability, DOE is an "employer" with respect to the employees of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies as that term is used in Section 4201(a) of ERISA, 29 U.S.C. § 1381(a), and therefore liable for the withdrawal liability of each;

(b)     In the alternative, a judgment that DOE is liable for the withdrawal liability of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies as alter egos with each;

(c)     In the alternative, a judgment that DOE is liable for the withdrawal liability of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies as a single employer with each;

(d)     In the alternative, a judgment that DOE is liable for the withdrawal liability of Hoyt, DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies as a joint employer with each;

(e)     A judgment against Defendant DOE pursuant to ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2), for all delinquent quarterly withdrawal liability payments due under the schedules for the withdrawal liability for Hoyt/DAK, Canal, Logan, Atlantic, B & M, R And C, and the Tufaro Companies, plus interest on the delinquent payments, an amount equal to the greater of the interest on the delinquent payments or liquidated damages in the amount of 20% of the delinquent payments, and the Fund's attorneys' fees and costs of this action;

(f)     A judgment against Defendant DOE in the amount of any delinquent withdrawal liability payments that become due during the course of this action, including the entire amount

- 30 -

of the withdrawal liability to the extent that there is a default and acceleration of the withdrawal

liability under ERISA Section 4219(c)(5), 29 § 1399(c)(5), and the full amount becomes due and

owing under ERISA during the course of this action, plus interest on those amounts, liquidated

damages, and the Fund's attorneys' fees and costs incurred in the collection of the withdrawal

liability; and

       (g)    An award to the Fund of such other and further relief as the Court may determine

is just and proper.

Dated:  September 17, 2015
        Washington, D.C.                   Respectfully submitted,

                                          */s/ Jeffrey S. Swyers*
                                          Barry S. Slevin, Esq.
                                          Jeffrey S. Swyers, Esq.*
                                          Owen M. Rumelt, Esq.
                                          Paul E. Knupp, III, Esq.*
                                          SLEVIN & HART, P.C.
                                          Attorneys for Plaintiffs

                                          614 Hempstead Gardens Drive
                                          West Hempstead, NY 11552
                                          (516) 203-7570

                                               -and-

                                          1625 Massachusetts Avenue N.W., Ste. 450
                                          Washington D.C. 20036
                                          (202) 797-8700
                                          (202) 234-8231 (fax)
                                          bslevin@slevinhart.com
                                          orumelt@slevinhart.com
                                          jswyers@slevinhart.com
                                          pknupp@slevinhart.com

                                          * Admitted *Pro Hac Vice*

A copy of this Complaint will be served upon the Secretary of Labor and the Secretary of the
Treasury by certified mail, as required by Section 502(h) of ERISA, 29 U.S.C. § 1132(h).

## CERTIFICATE OF SERVICE

I, Jeffrey S. Swyers, hereby certify that on this 17th day of September 2015 I filed, via this Court's ECF system, the foregoing Third Amended Complaint, which caused electronic notification upon the following:

Jeremy P. Blumenfeld
Brian Thomas Ortelere
David A. Gomez
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

Melissa D. Hill
Morgan, Lewis, & Bockius LLP
101 Park Avenue
New York, NY 10178

*Counsel for Defendant*

/s/ *Jeffrey S. Swyers*
Jeffrey S. Swyers

20320857v1